**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Symbiont Nutrition LLC, | No. CV-21-00426-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Western Agricultural Insurance Company, | |
| Defendant. | |

At issue are the parties' cross Motions for Summary Judgment. The Court considers Plaintiff Symbiont Nutrition LLC's Motion for Partial Summary Judgment (Doc. 44, PMSJ) and Statement of Facts (Doc. 45, PSOF), Defendant Western Agricultural Insurance Company's Response (Doc. 52, Def. Resp.) and Controverting Statement of Facts (Doc. 53, DCSOF), and Plaintiff's Reply (Doc. 54, Pl. Reply). The Court also considers Defendant's Motion for Summary Judgment (Doc. 46, DMSJ) and Statement of Facts (Doc. 47, DSOF), Plaintiff's Response (Doc. 50, Pl. Resp.) and Controverting Statement of Facts (Doc. 51, PCSOF), and Defendant's Reply (Doc. 55, Def. Reply). The Court will resolve the Motions without oral argument. LRCiv 7.2(f).

**I.   BACKGROUND**

Plaintiff is a livestock feed processor and seller operating in Arizona. At all relevant times, Defendant provided insurance to Plaintiff under a business owner's Policy that included coverage for damage to buildings and business personal property, debris removal within 180 days of a loss, and business income loss (BIL) within 12 months of a loss. On

December 2, 2019, Plaintiff reported a loss arising from a fire in a 1976 Bueler Aeroglide Dryer which was used to dry corn pellets for cow feed. Representatives of Defendant, including field claims representative Jeff Whitt, his supervisor Marty Einstein, special investigator Garth McClellan, and retained fire loss investigator Joe Sesniak, began investigating and adjusting the loss immediately. Although they initially determined that the fire loss was not covered because the Policy only explicitly covered the warehouse and the dryer was installed in a separate, open-sided structure, they reversed that determination because Brian Smith, the agent who sold the Policy to Plaintiff, stated he wrote the Policy incorrectly and it should have covered multiple buildings on the property.

On February 11, 2020, Plaintiff's owner, Mark Holt, provided a repair cost estimate to Defendant of $234,595 based in part on information provided by Plaintiff's accountant, Tom Hudgens. Whitt sent the dryer repair estimate to a specialty company, ACE, to review. Whitt also retained an accountant on behalf of Defendant, Michael Haugen, to manage Plaintiff's BIL claim.

On February 28, 2020, Whitt advanced Plaintiff $100,000 while the investigation proceeded. After all parties continued to exchange information, Whitt made Plaintiff a net settlement offer, excluding the BIL claim, of an additional $100,204.20 on April 3, 2020, which Defendant calculated by depreciating the dryer repair cost with respect to parts, labor, and the fire and electrical systems. Holt took issue with the depreciation calculation, and on April 10, 2020, Whitt made a second net settlement offer of $122,262.84 after a total depreciation deduction of $143,411.16. Holt accepted the second settlement offer on April 20, 2020, and Defendant issued a check the next day.

With regard to Plaintiff's BIL claim, after much communication between Haugen, Hudgens, Holt, and Whitt, Haugen initially determined Plaintiff had no BIL, but ultimately determined on November 13, 2020 that Plaintiff's BIL was $75,837.00. Defendant issued a check in that amount on January 5, 2021.

In sum, after the loss Plaintiff reported on December 2, 2019, Defendant paid a $100,000 advance on February 28, 2020, an additional $122,262.84 for dryer repairs and expenses on April 21, 2020, and $75,837.00 for BIL on January 5, 2021.

Unsatisfied with Defendant's adjustment of the claim, on February 4, 2021, Plaintiff filed this suit against Defendant, raising claims for breach of contract and bad faith. (Doc. 1-3 at 5–9, Compl.) Defendant now moves for summary judgment as to Plaintiff's bad faith claim and the aspect of the breach of contract claim concerning Defendant's payment for dryer repairs; Defendant contends a genuine issue of fact remains to be resolved as to the payment for BIL. Plaintiff cross-moves for summary judgment on one aspect of its breach of contract claim but not the bad faith claim.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,

210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

## III. ANALYSIS

### A. Breach of Contract Claim

In this lawsuit, Plaintiff claims that in addition to the payments Defendant has made, Plaintiff is owed (1) dryer repair costs of $143,411.16—the amount of depreciation Defendant deducted from its payment that it was not entitled to deduct—as well as additional, newly-reported amounts for dryer repairs, (2) additional BIL in the amount of $1,059,800 through December 31, 2020, (3) unpaid lost inventory in the amount of $332,000, and (4) consequential damages reasonably foreseeable from the breach of contract beyond the Policy's time limits in the amount of $55,000 per month. Defendant's refusal to pay these additional amounts forms the basis of Plaintiff's breach of contract claim. The parties do not contest that genuine disputes of fact remain as to the amounts of BIL, lost inventory, and consequential damages beyond the Policy's time limits, and those issues will proceed to trial. The parties cross-move for summary judgment only as to Defendant's payment for dryer repair costs.

Defendant seeks summary judgment with regard to its entire payment for dryer repair costs. Specifically, Defendant argues that its payment of $224,232.82, plus a supplemental payment of $45,255.96 to account for depreciation on labor costs that Defendant should not have deducted, is the total amount Plaintiff is entitled to under the Policy. In so arguing, Defendant maintains that accounting for depreciation of repair of the dryer, fire, and electrical systems was appropriate and that Plaintiff's new claim for dryer repair costs is precluded by estoppel and the doctrine of laches. For its part, Plaintiff asks the Court to enter summary judgment on the issue of depreciation, arguing that Defendant is not entitled to deduct depreciation for any portion of the dryer repair costs.

### 1. Depreciation

In *Walker v. Auto-Owners Insurance Co.*, the Arizona Supreme Court examined whether an insurer could "depreciate the costs of both materials and labor in determining the actual cash value of a covered loss." 517 P.3d 617, 618 (Ariz. 2022). After concluding that the policy in question provided for the replacement cost less depreciation method of calculating the actual cash value of a loss, that Court stated that an insurer could depreciate materials but not labor when arriving at the actual cash value of the loss. *Id.* at 621–23. As a result of that decision—which that Court entered halfway through the summary judgment briefing in this case—Defendant cut Plaintiff an additional check for $45,255.96 in labor depreciation it had previously deducted plus $18,102.38 in attorney's fees, reasoning the labor depreciation was precluded by *Walker*.

Defendant maintains that it was still permitted to depreciate for parts related to dryer, fire, and electrical repairs because the *Walker* court allowed depreciation of materials in determining actual cash value by way of the replacement cost less depreciation method. (Def. Resp. at 2.) In response, Plaintiff argues that the amount Defendant owes for the claim is not based on actual cash value at all, because Defendant chose to pay Plaintiff the dryer *repair cost* under the Policy—an alternative not considered or addressed by the *Walker* court. (Pl. Reply at 4–5.)

Interpretation of an insurance policy, as a contract, is a question of law. *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977). Under Arizona law, a court

> accord[s] words used in [insurance] policies their plain and ordinary meaning, examining the policy from the viewpoint of an individual untrained in law or business. If a policy is subject to conflicting reasonable interpretations, it is ambiguous, and we interpret it by examining . . . the transaction as a whole. If an ambiguity remains, we construe it against the insurer.

*Walker*, 517 P.3d at 620 (internal quotations and citations omitted).

In this case, the Policy provided four options for Defendant to compensate Plaintiff for a covered loss. Although one option was for Defendant to "pay the value of lost or damaged property," it is undisputed that Defendant chose another option, that is, to "pay the cost of repairing or replacing the lost or damaged property." (Doc. 45-2, PSOF Ex. B, FB Policy at 000033; DCSOF ¶ 4; Def. Resp. at 5.) As Plaintiff contends, *Walker* addressed a circumstance in which an insurer paid actual cash value for a covered loss and is therefore inapposite to the question of whether an insurer can depreciate *repair cost*. Indeed, the *Walker* court laid out three ways to define "actual cash value": "(1) as fair market value, (2) as replacement cost less depreciation, and (3) according to the 'broad evidence' rule." *Walker*, 517 P.3d at 621 (internal citations omitted). Repair cost—the undisputed basis chosen by Defendant to compensate Plaintiff for the covered loss—is not one of the definitions provided in *Walker* for "actual cash value."

Defendant argues that because the Policy's Declarations section provides that "Building Valuation Type" is "Actual Cash Value," Defendant can depreciate even the "cost of repairing or replacing the lost or damaged property" option of compensation for a covered loss. (Def. Resp. at 5; FB Policy at 000003, 000033.)[1] The Court agrees with

---

[1] In its brief, Defendant appears to quote from various sections of the Policy to attempt to show a path, or at least "foreshadowing," linking the Declarations section, which refers to Actual Cash Value, with the option in the Loss Payment section for Defendant to pay repair cost. (Def. Resp. at 5.) But Defendant provides no citations to the Policy, and the Court could not determine which precise sections Defendant attempted to quote. (*See* Def. Resp. at 5.) In any event, the Declarations section does not change the plain language of the Loss Payment section. Even if the Court found that reading the two sections together created an ambiguity by way of conflicting reasonable interpretations, the Court would resolve it by

- 6 -

Plaintiff that the plain language of the Policy distinguishes between property value—as in "Building Valuation Type," "Actual Cash Value," and "Pay the value of lost or damaged property" (FB Policy at 000003, 000033)—and repair cost—as in "Pay the cost of repairing or replacing the lost or damaged property" (FB Policy at 000033). Moreover, no provision of the Policy states that Defendant can depreciate repair cost.

In this sense, Plaintiff is correct that the Policy in this case is akin to the policy the Arizona Court of Appeals addressed in *Melancon v. USAA Casualty Insurance Co.*, 849 P.2d 1374, 1376 (Ariz. Ct. App. 1992). (Pl. Reply at 5.) There, as here, the policy gave the insurer the disjunctive choice to either (1) pay the value of the damaged property, or (2) pay the cost to repair or replace it. *See id.* And there, as here, the plain language of the policy "negates the contention" that "actual cash value implies a reduction attributable to depreciation and that this term applied to subsection (2) as well as subsection (1)." *Id.*

Neither the express language of the Policy provides that Defendant can depreciate repair cost, nor is such a proposition provided for in the case law as it pertains to a policy such as the one in this case. Plaintiff is thus entitled to partial summary judgment on the issue of depreciation: Defendant may not depreciate the cost of materials for the repair of the dryer, fire, and electrical systems under the Policy.

**2.    Defenses Grounded in Estoppel and Laches**

In moving for summary judgment on its entire payment to date for dryer repair costs, Defendant also makes an argument grounded in principles of estoppel. Specifically, Defendant contends—without citation to supporting case law—that it paid the repair costs based on Plaintiff's own repair estimate, so Plaintiff cannot now claim additional repair costs. (DMSJ at 15.) In response, Plaintiff argues that Defendant's contention is inconsistent with the testimony of Whitt, Defendant's adjuster, that Plaintiff's acceptance of the funds Defendant offered was not a final settlement and Plaintiff was free to make further claims for dryer repair costs. (Pl. Resp. at 6; Doc. 51-6, PCSOF Ex. 6, Whitt Depo. at 139–40.) This assertion is bolstered by evidence indicating that the initial dryer repairs

---

examining the transaction as a whole and, if necessary, construe the Policy against the insurer. *See Walker*, 517 P.3d at 620.

- 7 -

were "makeshift" because Defendant initially denied Plaintiff's claim to cover its loss, leaving Plaintiff with insufficient funds to make complete repairs. (Doc. 51-5, PCSOF Ex. 5, Holt Depo. at 106–08.) While the initial repairs were sufficient to get the dryer running, additional repairs were required to get the dryer fully operational, and Plaintiff presents some evidence that Defendant knew additional repairs were necessary and not yet completed. (Holt Depo. at 106–08; Doc. 51-15, PCSOF Ex. 15, Einstein Depo. at 90.)

Defendant does not point the Court to evidence that the settlement offer for dryer repairs was *final* such that Plaintiff's acceptance of the check was akin to accord and satisfaction of the entire dryer repair claim. (*See* DSOF ¶ 35 ("On April 20, 2020, Whitt spoke with Mark Holt, who agreed to accept the second settlement offer of $122,262.84 and a check for that amount was issued the next day.").) The Court agrees with Plaintiff that at least a genuine dispute of fact remains as to whether Defendant's payment for dryer repairs was a final adjustment of the covered loss.

In its Reply, Defendant argues for the first time that Plaintiff's request for coverage of additional dryer repair costs "comes too late in the process and is thus barred by the doctrine of laches." (Def. Reply at 8.) The Court notes that, under Arizona law, laches may not be used in the case of a mere delay, but rather "the delay must be unreasonable under the circumstances, including the party's knowledge of his or her right, and it must be shown that any change in the circumstances caused by the delay has resulted in prejudice to the other party sufficient to justify denial of relief." *Flynn v. Rogers*, 834 P.2d 148, 153 (Ariz. 1992). On the subject of tardiness, Defendant waited until its Reply brief to raise the laches argument, and arguments raised for the first time in a reply brief are deemed waived. *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).

For these reasons, the Court will deny Defendant's motion for summary judgment as it pertains to payment for dryer repair costs.

### B. Bad Faith Claim

Defendant also seeks summary judgment as to Plaintiff's bad faith claim, arguing that Defendant's alleged failures to adequately compensate Plaintiff for dryer repairs, BIL,

and other losses within a reasonable time were not consciously unreasonable. (DMSJ at 10–15.) In Response, Plaintiff argues that there is sufficient material evidence of Defendant's bad faith, precluding summary judgment. (Pl. Resp. at 6–15.)

The tort of bad faith arises when the insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). To establish a claim of bad faith, a plaintiff must first prove, under an objective test, that the insurer acted unreasonably. *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992). Then the plaintiff must prove, under a subjective test, that the insurer either "knew that its conduct was unreasonable" or acted with "reckless disregard." *Id*. Bad faith plaintiffs must provide evidence that their losses were "caused by defendant's conduct." *Rawlings v. Apodaca*, 726 P.2d 565, 577 (Ariz. 1986). An insurer "has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). An insurer can be found to have acted in "bad faith" when it delays payment of a legitimate claim. *Id*. at 280–81.

Plaintiff has demonstrated genuine issues of material fact as to Defendant's bad faith. First, Defendant initially denied Plaintiff's claim even though Defendant's agent represented to Plaintiff that the Policy would cover damage to the dryer. The parties dispute when Defendant knew of its agent's representation to Plaintiff; Defendant points to evidence that it only discovered what was promised to Plaintiff after it denied Plaintiff's claim, and Plaintiff argues Defendant knew, or should have known, before deciding to deny the claim. Because genuine disputes of fact remain as to Defendant's initial denial of the claim, the Court cannot conclude that no reasonable jury could find that Defendant acted unreasonably and with the requisite knowledge or reckless disregard.

Likewise, genuine disputes of fact exist as to the reasonableness of Defendant's payment for dryer repairs, from which Defendant deducted depreciation in contravention of the terms of the Policy as understood by an untrained customer. Moreover, as discussed above, evidence indicates Defendant knew Plaintiff had only completed makeshift repairs

to the dryer during the period immediately after Defendant initially denied the claim, such that Plaintiff would have to incur additional repair costs to get the dryer fully operational, yet Defendant has declined to pay for additional repair costs. A finder of fact must resolve what Defendant knew, and when, to determine whether Defendant acted unreasonably and with the requisite knowledge or reckless disregard in its payments for dryer repairs.

And multiple questions of fact remain as to the reasonableness of Defendant's payment for BIL. The parties agree that there is genuine dispute over the BIL calculations, but Defendant essentially argues that it relied on the calculations of its retained accountant, Haugen, based on the information he received from Plaintiff, so its actions cannot have been consciously unreasonable. (*E.g.* Reply at 7.) In response, Plaintiff points to evidence to argue that Haugen's calculations were unreasonable and not credible on their face. (Resp. at 12.) Because all of these issues must be resolved by a jury, the Court will deny Defendant's request for summary judgment as to Plaintiff's bad faith claim. *See Zilisch*, 995 P.2d at 276 (stating that insurer's "belief in fair debatability is a question of fact to be determined by the jury" (internal quotation omitted)).

### C. Punitive Damages

By contrast, Plaintiff does not meet its evidentiary burden to resist Defendant's request for summary judgment with regard to Plaintiff's prayer for punitive damages. In Arizona, to recover punitive damages, the plaintiff must "show 'something more' than the conduct necessary to establish the tort" of bad faith. *Thompson v. Better–Bilt Aluminum Prods. Co.*, 832 P.2d 203, 209 (Ariz. 1992) (quoting *Rawlings*, 726 P.2d at 577). This "something more," requires the plaintiff to "prove that defendant's evil hand was guided by an evil mind." *Rawlings*, 726 P.2d at 578. The requisite "evil mind" may be found when the defendant either (1) "intended to injure the plaintiff" or (2) "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.* Punitive damages are recoverable in a bad faith tort action "when, *and only when*, the facts establish that defendant's conduct was aggravated, outrageous, malicious, or fraudulent." *Id*. (emphasis in original). "Indifference to facts or failure to investigate are

1 sufficient to establish the tort of bad faith but may not rise to the level required by the punitive damage rule." *Id*.

The plaintiff must prove the defendant's "evil mind" by clear and convincing evidence. *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (Ariz. 1986). The evidence may be either direct or circumstantial. *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 907 P.2d 506, 518 (Ariz. App. 1995). An "evil mind" may be inferred from a defendant's conduct or objectives. *Hudgins v. Southwest Airlines, Co.*, 212 P.3d 810, 825 (Ariz. App. 2009). As is always true at the summary judgment stage, a motion for summary judgment on punitive damages requires that "the evidence and all reasonable inferences that may be drawn from the evidence should be construed in a light most favorable to the non-moving party." *Thompson*, 832 P.2d at 211. "A motion for summary judgment on the issue of punitive damages must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence. Conversely, the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence." *Id*.

Although Plaintiff lays out the punitive damages standard in detail in its brief, it does not point to any evidence whatsoever of Defendant's evil mind. (Pl. Resp. at 13–15.) Plaintiff's concern about the Court's application of a burden of proof to the evidence (Pl. Resp. at 14) is irrelevant if Plaintiff identifies no evidence—as required by Rule 56(c)—to which to apply the burden of proof. Defendant's alleged unreasonable acts, which were sufficient to support Plaintiff's bad faith claim, are not by themselves sufficient to support a punitive damages claim. Without more, the Court will grant Defendant's request for summary judgment as to Plaintiff's punitive damages prayer.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion for Partial Summary Judgment (Doc. 44). Under the Policy, Defendant may not depreciate the cost of materials for the repair of the dryer, fire, and electrical systems.

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant's Motion for Summary Judgment (Doc. 46). Defendant is entitled to summary judgment with

respect to Plaintiff's prayer for punitive damages, but Defendant's Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that this matter will proceed to trial, and the Court will set a pre-trial status conference by separate Order.

Dated this 2nd day of May, 2023.

Honorable John J. Tuchi
United States District Judge